IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF SOUTH CAROLINA
FLORENCE DIVISION

| | | |
|---|---|---|
| William R. Fisher and Silbray N. Fisher, | ) | |
| | ) | |
| Plaintiffs, | ) | |
| | ) | |
| vs. | ) | Civil Action No. 4:09-cv-00252-TLW |
| | ) | |
| Mark F. Pelstring, M.D., Wyeth, Inc., | ) | |
| Schwarz Pharma, Inc., and PLIVA USA, Inc., | ) | |
| | ) | |
| Defendants. | ) | |

# ORDER

This action was removed to this Court from the Court of Common Pleas for Horry County, South Carolina on January 30, 2009. (Doc. #1). Defendants Wyeth, Inc. and Schwarz Pharma, Inc., filed a motion for summary judgment on January 25, 2010. (Doc. #70). The plaintiffs filed a response in opposition to the motion for summary judgment on February 11, 2010. (Doc. #71). The defendants filed a reply on February 22, 2010. (Doc. #75). The defendants supplemented their initial motion on April 13, 2010. (Doc. #84). This Court conducted a hearing on this matter on April 27, 2010. Following the hearing, the defendants filed three additional supplements. (Docs. #86, #87, #88).

## FACTS

This action involves medical malpractice and products liability claims brought by the plaintiff William R. Fisher ("plaintiff") and his wife, Silbray N. Fisher (collectively "plaintiffs"). Plaintiff William R. Fisher asserts that he was under the care of defendant Dr. Mark F. Pelstring, M.D. at the Loris Family Health Center. The plaintiff asserts that he was prescribed the drug metoclopramide

on or about January 15, 2003 to treat symptoms of acid reflux disease. Metoclopramide, also known by the brand-name Reglan, is a prescription drug approved for the treatment of gastroesophageal reflux disease, commonly known as heartburn. The plaintiff asserts that he was prescribed metoclopramide by his physician, and continued to ingest the drug between January 15, 2003 and January 31, 2005. (Compl. at ¶ 41). The plaintiff further asserts that on May 25, 2005, he was diagnosed with drug-induced tardive dyskinesia related to his long-term use of metoclopramide. (Compl. at ¶ 41). Tardive dyskinesia is an incurable neurological disorder that can cause involuntary and uncontrollable movements of the head, neck, face, arms, legs, and trunk in addition to grotesque facial grimacing and open-mouthed, uncontrollable tongue movements, tongue thrusting, tongue chewing, and other involuntary movements. (Compl. at ¶ 32, ¶ 33).

The FDA initially approved a New Drug Application allowing A.H. Robins Company, Inc., to market metoclopramide under the brand-name Reglan in the early 1980s. Defendant Wyeth, Inc. ("Wyeth") acquired the rights to manufacture and distribute metoclopramide under the brand-name Reglan from A.H. Robins. Wyeth manufactured and distributed metoclopramide tablets in the name-brand and generic forms from approximately 1989 through 2001. (Aff. Warren L. Sunshine, P.h.D., Doc. #70 Ex. 1). In December 2001, Wyeth sold the rights to Reglan tablets to defendant Schwarz Pharma, Inc. ("Schwarz"). (Sunshine Aff.). Wyeth ceased distribution of both the Reglan name-brand tablets and generic metoclopramide tablets at the time of the sale to Schwarz. (Sunshine Aff.). Schwarz manufactured Reglan tablets from 2001 until 2008. (Sunshine Aff.) (Aff. Jeff Siefert, Doc. #70, Ex 2).

The record indicates that additional manufacturers, including defendant PLIVA, USA, Inc., began manufacturing and distributing generic forms of metoclopramide in the mid-1980s. The

plaintiff asserts that defendant Pelstring prescribed name-brand Reglan to the plaintiff, and that the plaintiff's pharmacy filled the prescription with generic metoclopramide as required by the generic laws of South Carolina. (Resp. in Opp. at p. 19, Doc. #71). It is undisputed that during the time period that the plaintiff ingested metoclopramide, he took only the generic form of the pharmaceutical. The record indicates that the plaintiff did not take any form of metoclopramide manufactured or distributed by defendants Wyeth or Schwarz. (Resp. in Opp. at p. 1, Doc. #71).

The plaintiffs have filed fifteen claims for relief. Defendants Wyeth and Schwarz have moved for summary judgment as to all claims asserted against each respective defendant on the ground that neither defendant manufactured nor distributed the pharmaceuticals responsible for the plaintiff's alleged injuries.

**SUMMARY JUDGMENT STANDARD**

Pursuant to Federal Rule of Civil Procedure 56(c), the defendants are entitled to summary judgment if the pleadings, responses to discovery, and the record reveal that "there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." A genuine issue of material fact exists "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986). As the party seeking summary judgment, the defendants bear the initial responsibility of informing this Court of the basis for its motion. See Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986). This requires that the defendants identify those portions of the "pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any," which they believe demonstrate the absence of genuine issues of material fact. Celotex, 477 U.S. at 323; see also Anderson, 477 U.S. at 249.

3

Though the defendants bear this initial responsibility, the plaintiffs, as the nonmoving party, must then produce "specific facts showing a genuine issue for trial." Fed R. Civ. P. 56(e)(2); see Celotex, 477 U.S. at 317. In satisfying this burden, the plaintiffs must offer more than a mere "scintilla of evidence" that a genuine issue of material fact exists, Anderson, 477 U.S. at 252, or that there is "some metaphysical doubt" as to material facts. Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 586 (1986). Rather, the plaintiffs must produce evidence on which a jury could reasonably find in their favor. See Anderson, 477 U.S. at 252.

In considering the defendants' motion for summary judgment, this Court construes all facts and reasonable inferences in the light most favorable to the plaintiffs as the nonmoving party. See Miltier v. Beorn, 869 F.2d 848 (4th Cir. 1990). Summary judgment is proper "[w]here the record taken as a whole could not lead a rational trier of fact to find for the non-moving party, there [being] no genuine issue for trial." Matsushita, 475 U.S. at 587 (1986) (internal quotations omitted).

## DISCUSSION

Among the claims raised in this action, the plaintiffs have asserted claims against Wyeth and Schwarz for strict products liability, manufacturing defect, design defect, breach of express warranty, breach of implied warranty, negligence, negligent misrepresentation, breach of undertaking special duty, fraud and misrepresentation, constructive fraud, fraud by concealment, violation of the South Carolina Unfair Trade Practices Act, intentional infliction of emotional distress, and loss of consortium. Because the record indicates that the plaintiff never ingested a pharmaceutical manufactured or distributed by defendants Wyeth and Schwarz, the name-brand defendants assert that they are entitled to summary judgment as a matter of law. The plaintiffs assert that this is a "failure to warn case," and focus the analysis on the failure of the name-brand manufacturers to warn

about the risks associated with their products. (Resp. in Opp. at p.1, Doc. #71). The plaintiffs assert that the warnings associated with the generic forms of metoclopramide were the same as the warnings crafted and sponsored by defendants Wyeth and Schwarz to accompany the name-brand form of the drug. The plaintiffs contend that, although Wyeth and Schwarz did not manufacture the pharmaceuticals actually ingested by the plaintiff, these defendants should remain liable under claims of negligence, fraud, and misrepresentation as they relate to the defendants' failure-to-warn. Thus, this Court must determine if the plaintiffs can maintain an action under South Carolina law against the name-brand manufacturer of a pharmaceutical for injuries allegedly caused by a generic pharmaceutical manufactured by another company.

The Fourth Circuit addressed a similar factual scenario in one of the earliest and most frequently cited cases in this area of products liability law. In Foster v. American Home Products Corp., 29 F.3d 165 (4th Cir. 1994) ("Foster"), two parents brought suit alleging that their infant daughter died as a result of taking the generic form of the prescription drug Phenergan. The parents brought suit against the company thought to have manufactured the generic form of the drug actually ingested by their daughter, as well as the company that manufactured the name-brand form of the drug. The record did not indicate that the plaintiffs' daughter had taken the name-brand form of the drug. The district court granted summary judgment in favor of the name-brand defendant on the plaintiffs' negligence-wrongful death, negligence-survivorship, strict liability, and breach of warranty claims. Id. at 167. However, the district court denied summary judgment as to the plaintiffs' claims of negligent misrepresentation against the name-brand manufacturer. Id.

The Fourth Circuit concluded that the district court erred in allowing the claim of negligent misrepresentation against the name-brand manufacturer to survive summary judgment. The Fourth

Circuit noted that "Maryland law requires a plaintiff seeking to recover for an injury by a product to demonstrate that the defendant manufactured the product at issue." Id. at 168 (citing Tidler v. Eli Lilly & Co., 851 F.2d 418, 424 (D.C. Cir. 1988)). In examining the complexities of the FDA approval process, the Fourth Circuit noted that "[f]or economic reasons, generic manufacturers accept without question the studies performed by name brand manufacturers and simply copy verbatim the name brand drugs' package circulars." Id. at 169. The plaintiffs asserted that the name-brand manufacturers should, therefore, be held responsible to users of the generic drugs for any representations made or not made in connection with the name-brand drug, because the name-brand manufacturers "know that generic manufacturers rely on their studies and duplicate their labeling, and that if the name brand manufacturer does not issue a warning, it will simply not be made." Id. The Fourth Circuit rejected this assertion, noting that there was "no legal precedent for using a name brand manufacturer's statements about its own product as a basis for liability for injuries caused by other manufacturers' products, over whose production the name brand manufacturer had no control." Id. The court stated that "[t]his would be especially unfair when, as here, the generic manufacturer reaps the benefits of the name brand manufacturer's statements by copying its labels and riding on the coattails of its advertising." Id. The court added that "[t]he pre-marketing approval scheme Congress established for generic equivalents of previously approved drugs cannot be construed to create liability of a name brand manufacturer when another manufacturer's drug has been consumed." Id. at 170.

The Fourth Circuit then specifically addressed the negligent misrepresentation claim, noting that a crucial element of the claim under state law is the requirement that the defendant be under a duty to the plaintiff. Id. at 171. The plaintiffs asserted that a duty was present in the case because

it was foreseeable to the name-brand manufacturer that any negligent misrepresentations about its product could result in personal injury to the users of generic equivalents. Id. However, the Fourth Circuit concluded that "to impose a duty in the circumstances of this case would be to stretch the concept of foreseeability too far." Id. The Fourth Circuit noted that under state law, "[t]he duty required for the tort of negligent misrepresentation arises when there is 'such a relation that one party has the right to rely for information upon the other, and the other giving the information owes a duty to give it with care.'" Id. (internal citations omitted). The Fourth Circuit held that the name-brand manufacturer simply "has no duty to users of other manufacturers' products," and therefore, the negligent misrepresentation claim could not be maintained. Id.

This question has been addressed under the state law of two additional states within the Fourth Circuit. The North Carolina District Court addressed a similar factual scenario in Stoddard v. Wyeth, Inc., 630 F. Supp. 2d 631 (E.D.N.C. 2009). In Stoddard, the plaintiff asserted that he had developed tardive dyskinesia from his use of generic metoclopramide. Although the record indicated that the plaintiff had ingested the generic form of the drug manufactured by PLIVA, the plaintiff also brought suit against the name-brand manufacturers Wyeth and Schwarz. Id. at 632. The plaintiff filed fifteen separate claims including claims for strict liability, negligence, breach of warranty, negligent misrepresentation, breach of undertaking special duty, intentional and negligent infliction of emotional distress, unfair or deceptive trade practices, and loss of consortium. Id. at 633. The court first dismissed the strict liability claims, noting that North Carolina does not recognize strict liability in tort. Id. at 632. The court then addressed the remaining claims, noting that each was "premised on allegations that Wyeth and Schwarz failed to adequately warn of the dangers of using generic metoclopramide manufactured and distributed by another company." Id. at 633. The court

7

summarized that "[a]lthough cloaked in different theories for recovery, plaintiffs' claims are nevertheless product liability claims." Id. The court cited Foster v. Am. Home Prods. Corp., 29 F.3d 165 (4th Cir. 1994), and concluded that the "court agrees with the Fourth Circuit's reasoning in Foster (and the weight of authority considering this issue) and concludes that under North Carolina law a manufacturer of a brand name pharmaceutical may not be held liable for injuries stemming from the use of another manufacturer's generic bioequivalent." Id. at 634. (internal citations omitted). The court then dismissed all claims against the name-brand manufacturers Wyeth and Schwarz.

A second district court within North Carolina reached the same conclusion in the recent case of Couick v. Wyeth, Inc., 691 F. Supp. 2d 643 (W.D.N.C. 2010). In Couick, the plaintiff asserted that she developed tardive dyskinesia as a result of her exposure to generic metoclopramide, and brought suit against both the generic and the name-brand manufacturers of the drug. Although the plaintiff filed numerous claims, the court cited a North Carolina statute providing that a "'[p]roduct liability action' includes any action brought for or on account of personal injury, death or property damage caused by or resulting from the manufacture, construction, design, formulation, development of standards, preparation, processing, assembly, testing, listing, certifying, warning, instructing, marketing, selling, advertising, packaging, or labeling of any product." Id. at 645 (citing N.C. Gen. Stat. § 99B-1(3)). Applying this statute, the court noted that "[w]hile the plaintiff's claims are masked in various legal theories, they are premised on a single claim of product liability." Id. After narrowing the claims, the court noted that North Carolina precedent and the Fourth Circuit's decision in Foster required that the court grant summary judgment on behalf of the name-brand manufacturers Wyeth and Schwarz. Id. at 645-646.

8

The West Virginia District Court addressed a similar factual scenario in the recent case of Meade v. Parsley, 2009 WL 3806716 (S.D. W.Va. 2009). In Meade, the plaintiff asserted that she developed tardive dyskinesia and akathisia, similar neurological disorders, after taking generic metoclopramide for thirteen months. Id. at *1. The plaintiff brought suit against both the generic and the name-brand manufacturers, though the record indicated that the plaintiff had ingested only the generic form of the drug. Id. at *2. Relying on Foster, the district court concluded that the generic manufacturers were not responsible "for the damage resulting from a product that they did not manufacture, distribute or sell." Id. The court noted that while Foster was based in Maryland products liability law, "West Virginia law does not yield a different result." Id. at *3. The court noted that "[p]roduct liability law in West Virginia allows for recovery when the plaintiff can prove that a product was defective when it left the manufacturer and the defective product was the proximate cause for the plaintiff's injuries." Id. (internal citations omitted). Because the generic manufacturers did not manufacture the product responsible for the plaintiff's alleged injuries, the court concluded that proximate cause was lacking. Id. The court further noted that the duty of care required to support many of the remaining claims was absent, and dismissed all claims against the name-brand manufacturers.

Several decisions within the state of South Carolina are also instructive on the issue now before this Court. In Ryan v. Eli Lilly & Co., 514 F. Supp. 1004, (D.S.C. 1981), the plaintiff brought suit alleging that she developed a pre-cancerous condition as a result of her prenatal exposure to diethylstilbestrol (DES). As a basis for summary judgment, the defendants asserted that, after lengthy discovery, the plaintiff could not identify the manufacturer of the DES tablets taken by her mother 28 years prior to the suit. Id. at 1006. The district court first noted, "[i]t is elementary that

in an action claiming injury from a product, the plaintiff must show causal connection between the defendant manufacturer and that product." Id. Applying the law of South Carolina, the court noted that "[t]he defendant manufacturer must be identified with the specific instrumentality that allegedly caused the injury," and that "[p]roof connecting the defendant with the instrumentality of the alleged defect is necessary regardless of the theory upon which plaintiff relies." Id. at 1006-1007 (internal citations omitted). The court concluded that "[t]he unequivocal law of South Carolina is the plaintiff in a negligence action has not only the burden of proving negligence but also the burden of proving that the injury or damage was caused by the actionable conduct of the particular defendant." Id. at 1018. Thus, because the plaintiff could not identify the manufacturer of the drug that allegedly caused her injuries, the court granted summary judgment in favor of all defendants. Id. at 1019.

In Baughman v. General Motors Corp., 627 F. Supp. 871 (D.S.C. 1985), the plaintiff was injured while changing a truck tire when a rim assembly separated explosively. The plaintiff sued General Motors, the manufacturer of the truck that the plaintiff was working on at the time of the injury. Id. at 872. The plaintiff was able to identify the type of rim assembly that separated, though the actual assembly could not be located. However, it was determined that the type of rim assembly identified by the plaintiff was not original equipment on the model year of the truck in question. Id. Further, the plaintiff could not show that the rim assembly had been manufactured by General Motors, nor placed into the stream of commerce by General Motors by being installed as original equipment on any vehicle manufactured by General Motors. Id. at 872-873. Applying South Carolina law, the district court noted that "[i]t is a fundamental principle of the law of products liability that a product manufacturer is not an insurer of its product, and a plaintiff may recover against a manufacturer only upon a showing that the product was in a defective condition

10

unreasonably dangerous at the time it left the manufacturer's control." Id. at 874. The court noted that "[a]s a necessary corollary, the plaintiff must be capable of showing that the defendant either manufactured, sold or exercised control over the defective product." Id. The court concluded that "[b]ecause plaintiff cannot show that the defendant exercised dominion over the allegedly defective rim, defendant may not be held liable under any tort theory." Id. at 878.

The above cases applying South Carolina law indicate that the courts of South Carolina would apparently not allow a tort recovery against a defendant for injuries caused by a product manufactured, distributed, and sold by a third party to which the plaintiff has no connection. Because the law of South Carolina – like the law of Maryland – does not support such a claim, this Court is bound by the Fourth Circuit's holding in Foster v. American Home Products Corp., 29 F.3d 165 (4th Cir. 1994). Based on the record before this Court, a record which indicates that defendants Wyeth and Schwarz had no connection to the pharmaceuticals that allegedly caused the plaintiff's injuries, and after careful consideration of the relevant caselaw, this Court concludes that summary judgment is granted in favor of defendants Wyeth and Schwarz.

The plaintiffs argue in favor of a contrary result, urging the Court to consider the reasoning of the court in the case of Conte v. Wyeth, Inc., 168 Cal.App.4th 89 (Ct. App. 2009). In Conte, the California Court of Appeals considered and expressly rejected the Fourth Circuit's analysis in Foster. Like the case now before this Court, Conte involved the plaintiff's claim that she had developed tardive dyskinesia as a result of ingesting the generic form of metoclopramide. Id. at 95. In rejecting Foster, the court concluded that the fact that the name-brand manufacturer did not manufacture or sell the product that the plaintiff ingested would not relieve the name-brand manufacturer from "its general duty to use due care in disseminating product information to those

11

it knows or should know are likely to be harmed as a result of their physician's reliance on that information." Id. at 111. The court concluded that California law supported the plaintiff's position that the name-brand manufacturer "owes a duty of care to those people it should reasonably foresee are likely to ingest metoclopramide in either the name-brand or generic version when it is prescribed by their physicians in reliance on [the name-brand manufacturer's] representations." Id.

While the reasoning of the California Court of Appeals in Conte is not without persuasive effect, the decision is in conflict with the law of this state and of this federal circuit. The South Carolina and Fourth Circuit authority binding this Court compels dismissal of defendants Wyeth and Schwarz. In addition, the Court notes that Conte is in direct conflict with the weight of authority in the courts that have addressed the issue now before this Court. The Eighth Circuit specifically rejected Conte and endorsed the Fourth Circuit's analysis in Foster in the case of Mensing v. Wyeth, Inc., 588 F.3d 603 (8th Cir. 2009). In addition, numerous district courts applying state law have also reached a conclusion in line with this Court's decision in cases including, but not limited to, Barnhill v. Teva Pharm. USA, Inc., 2007 WL 6947996 (S.D. Ala. 2007); Mosley v. Wyeth, Inc., 2010 WL 2594000 (S.D. Ala. 2010); Fields v. Wyeth, Inc., 613 F. Supp. 2d 1056 (W.D. Ark. 2009) (adopting Foster); Neal v. Teva Pharm. USA, Inc., 2010 WL 2640170 (W.D. Ark. 2010); Sheeks v. Am. Home Prods. Corp., 2004 WL 4056060 (D. Colo. 2004) (adopting Foster); Howe v. Wyeth, Inc., 2010 WL 1708857 (M.D. Fla. 2010); Levine v. Wyeth, Inc., 684 F. Supp. 2d 1338 (M.D. Fla. 2010) (rejecting Conte); Swicegood v. PLIVA, Inc., 543 F. Supp. 2d 1351 (N.D. Ga. 2008) (adopting Foster); Morris v. Wyeth, Inc., 642 F. Supp. 2d 677 (W.D. Ky. 2009) (adopting Foster); Smith v. Wyeth, Inc., 2008 WL 2677051 (W.D. Ky. 2008) (adopting Foster); Wilson v. Wyeth, Inc., 2008 WL 2677049 (W.D. Ky. 2008) (adopting Foster); Craig v. Pfizer, Inc., 2010 WL 2649544 (W.D. La.)

12

(adopting Report and Recommendation of United States Magistrate Judge, Craig v. Pfizer, Inc., 2010 WL 2649545); Leblanc v. Wyeth, Inc., 2006 WL 2883030 (W.D. La. 2006); Morris v. Wyeth, Inc., 2009 WL 4064103 (W.D. La. 2009); Tarver v. Wyeth Inc., 2005 WL 4052382 (W.D. La. 2005) (dismissing claims against Schwarz); Tarver v. Wyeth Inc., 2006 WL 1517546 (W.D. La. 2006) (dismissing claims against Wyeth); Moretti v. Wyeth, Inc., 2009 WL 749532 (D. Nev. 2009) (citing Foster, rejecting Conte); Schrock v. Wyeth, Inc., 601 F. Supp. 2d 1262 (W.D. Okla. 2009); Goldych v. Eli Lilly and Co., 2006 WL 2038436 (N.D.N.Y. 2006) (adopting Foster); Phelps v. Wyeth, Inc., 2010 WL 2553614 (D. Or.) (adopting Findings and Recommendation of United States Magistrate Judge, Phelps v. Wyeth, Inc., 2010 WL 2553619); Burke v. Wyeth, Inc., 2009 WL 3698480 (S.D. Tex. 2009) (rejecting Conte); Cousins v. Wyeth Pharm. Inc., 2009 WL 648703 (N.D. Tex. 2009); Finnicum v. Wyeth, Inc., __ F. Supp. 2d __, 2010 WL 1718204 (E.D. Tex. 2010); Hardy v. Wyeth Inc., 2010 WL 1222183 (E.D. Tex. 2010) (adopting Report and Recommendation of United States Magistrate Judge, Hardy v. Wyeth, Inc., 2010 WL 1049588); Pustejovsky v. Wyeth, Inc., 2008 WL 1314902 (N.D. Tex. 2008) (adopting Foster); and Beutella v. A.H. Robins Co., Inc., 2001 WL 35669202 (D. Utah 2001) (adopting Foster).

Thus, the Court concludes that South Carolina law does not support an action against the name-brand drug manufacturers Wyeth or Schwarz for injuries allegedly caused by a generic drug manufactured by another company. Foster at 171. Focusing on the details of the specific claims against these defendants, this Court concludes that each claim against Wyeth and Schwarz requires dismissal. The plaintiffs have asserted three strict liability claims against defendants Wyeth and Schwarz. More specifically, the plaintiffs' second,[1] third, and fourth causes of action are for strict

---

[1] The plaintiffs' first cause of action for medical malpractice is asserted only as to defendant Pelstring.

products liability, strict liability-manufacturing defect, and strict liability-design defect. South Carolina Code provides a strict liability cause of action against "[o]ne who sells any product in a defective condition unreasonably dangerous to the user or consumer" if the seller is engaged in the business of selling such a product, and the product is expected to and does reach the user or consumer without substantial change in the condition in which it is sold. S.C. Code Ann. § 15-73-10. Because defendants Wyeth and Schwarz did not sell or provide any product to the plaintiffs in this case, and after consideration of the legal authority discussed herein, this Court concludes that the plaintiffs cannot maintain a strict liability action against these defendants. For this reason, claims two, three, and four are dismissed as to defendants Wyeth and Schwarz.

The plaintiffs' fifth and sixth claims for relief are for breach of express and implied warranties. South Carolina law provides three causes of action for breach of warranty against the seller of a defective product. S.C. Code Ann. § 36-2-313 (express warranty); § 36-2-314 (implied warranty of merchantability); § 36-2-315 (implied warranty of fitness for a particular purpose). However, because defendants Wyeth and Schwarz did not sell, manufacture, or distribute the products allegedly responsible for the plaintiffs' injuries, the plaintiffs have no warranty claims against these defendants under South Carolina law. Thus, claims five and six are dismissed as to defendants Wyeth and Schwarz.

The plaintiffs' seventh and eighth claims for relief are for negligence and negligent misrepresentation. A crucial element of each claim under South Carolina law is that the defendant owe the plaintiff a duty of due care. Crolley v. Hutchins, 378 S.E.2d 716, 717 (Ct. App. 1989) (negligence); Hurst v. Sandy, 494 S.E.2d 847, 852 (Ct. App. 1997) (negligent entrustment). Because the plaintiff cannot establish that Schwarz or Wyeth manufactured or sold the products allegedly

responsible for the plaintiff's injuries, the plaintiffs cannot establish that either defendant owed the plaintiffs a duty of care. For this reason, claims seven and eight are dismissed as to defendants Wyeth and Schwarz.

The plaintiffs' ninth claim for relief is for breach of undertaking special duty. The plaintiffs have not shown that such a claim exists under South Carolina law, nor that the defendants Wyeth and Schwarz breached any special duty to the plaintiffs. Therefore, claim nine is dismissed as to defendants Wyeth and Schwarz.

The plaintiffs' tenth, eleventh, and twelfth claims are for fraud and misrepresentation,[2] constructive fraud, and fraud by concealment, respectively. Under South Carolina law, the elements of a cause of action for fraud include 1) a representation; 2) its falsity; 3) its materiality; 4) either knowledge of its falsity or a reckless disregard of its truth or falsity; 5) intent that the representation be acted upon; 6) the hearer's ignorance of its falsity; 7) the hearer's reliance on its truth; 8) the hearer's right to rely thereon; and 9) the hearer's consequent and proximate injury. Ardis v. Cox, 431 S.E.2d 267, 269 (Ct. App. 1993) (citing King v. Oxford, 318 S.E.2d 125 (Ct. App. 1984)). To establish an action for constructive fraud, a plaintiff must establish all elements of actual fraud except the element of intent. Id. (citing O'Quinn v. Beach Associates, 249 S.E.2d 734 (1978)). Based on the record before this Court, the plaintiffs have not established a right to rely on the allegedly fraudulent representations of Schwarz and Wyeth. Thus, the plaintiffs' claims for fraud and constructive fraud cannot be maintained as a matter of law. Further, an action for fraudulent concealment requires that the defendant be under a duty to speak. Id. at 270. The record does not support a conclusion that defendants Wyeth and Schwarz were under a duty to disclose facts to the

---

[2]Under South Carolina law, this cause of action is typically referred to simply as a cause of action for fraud.

plaintiffs, therefore the plaintiffs' claim for fraudulent concealment must be dismissed as well. For these reasons, claims ten, eleven, and twelve are dismissed as to defendants Wyeth and Schwarz.

The plaintiffs' thirteenth cause of action is for violation of the South Carolina Unfair Trade Practices Act, S.C. Code Ann. §§ 39-5-10 *et seq*. The Unfair Trade Practices Act creates a private right of action for "[a]ny person who suffers any ascertainable loss of money or property, real or personal, as a result of the use or employment by another person of an unfair or deceptive method, act or practice declared unlawful by § 39-5-20." S.C. Code § 39-5-140(a). See Noack Enterprises, Inc. v. Country Corner Interiors of Hilton Head Island, Inc., 351 S.E.2d 347, 348 (Ct. App. 1986). The South Carolina Court of Appeals has held that the statute requires a plaintiff to prove: 1) a violation of the Act, 2) proximate cause, and 3) damages. Charleston Lumber Co., Inc. v. Miller Housing Corp., 458 S.E.2d 431 (Ct. App. 1996) (reversed on other grounds, Charleston Lumber Co., Inc. v. Miller Housing Corp., 525 S.E.2d 869 (2000)). Because there is no causal relationship between the plaintiffs and defendants Wyeth and Schwarz, the requisite proximate cause is absent. Further, the plaintiffs have provided no case law in support of this claim that would suggest a contrary result. Therefore, claim thirteen is dismissed as to defendants Wyeth and Schwarz.

The plaintiffs' fourteenth cause of action is for intentional infliction of emotional distress. The elements of a cause of action for intentional infliction of emotional distress are: 1) the defendant intentionally or recklessly inflicted severe emotional distress . . . 2) the conduct was so extreme and outrageous so as to exceed all possible bounds of decency and must be regarded as atrocious, and utterly intolerable in a civilized community; 3) the actions of the defendant caused the plaintiff's emotional distress; and 4) the emotional distress suffered by the plaintiff was severe such that no reasonable man could be expected to endure it. Hansson v. Scalise Builders of South Carolina, 650

S.E.2d 68, 70-71 (2007) (citing Ford v. Hutson, 276 S.E.2d 776, 778 (1981)). Again, the record before this Court indicates that the requisite causation is lacking. Therefore, the plaintiffs' fourteenth claim is dismissed as to defendants Wyeth and Schwarz.

The fifteenth and final claim against defendants Wyeth and Schwarz is a claim for loss of consortium by the plaintiff wife. In South Carolina, "claims for personal injuries and for loss of consortium are separate and distinct." Lee v. Bunch, 647 S.E.2d 197, 201 (2007) (citing Daves v. Cleary, 584 S.E.2d 423, 430 (Ct. App. 2003)). However, the South Carolina Supreme Court has also noted that "[g]enerally, a plaintiff spouse's claim for loss of consortium fails if the impaired spouse's claim fails, whether the claim is considered separate and independent from the impaired spouse's claim or derivative in nature." Id. at 202 (quoting 41 Am.Jur.2d Husband and Wife § 227 (2007)). Because the plaintiff has no viable claims against defendants Wyeth and Schwarz, the Court concludes that the loss of consortium claim brought by the plaintiff's wife must be dismissed as to these defendants. For this reason, the plaintiffs' fifteenth claim for loss of consortium is dismissed as to defendants Wyeth and Schwarz.

## CONCLUSION

For the reasons set forth herein, defendants Wyeth and Schwarz's motion for summary judgment is, hereby, **GRANTED** in its entirety, (Doc. #70), and defendants Wyeth, Inc. and Schwarz Pharma, Inc. are hereby **DISMISSED** from this action.

**IT IS SO ORDERED**.

                                                              s/ Terry L. Wooten
                                                         United States District Judge

July 28, 2010
Florence, South Carolina